**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

Joshua C.,

                    Plaintiff,

v.

Frank Bisignano, Commissioner of Social
Security,

                    Defendant.

Civil No. 3:25-cv-01190 (TOF)

July 16, 2026

**RULING ON PENDING MOTIONS**

The Plaintiff, Joshua C., [1] appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant") rejecting his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. (Compl., ECF No. 1.)  He has moved the Court for an order reversing the decision of the Administrative Law Judge ("ALJ") and remanding the case for further proceedings or for calculation of benefits.  (ECF Nos. 15, 15-1.)  The Commissioner has moved the Court to affirm.  (ECF No. 24.)

The Plaintiff makes three principal claims of error.  First, he argues that the ALJ erred when he relied on the opinions of non-examining state agency consultants without further developing the record through additional medical opinion evidence.  (*See* Pl.'s Memo. of L., ECF No. 15-1, at 20-21) ("Pl.'s Memo.").  Second, he asserts that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence.  (*Id.* at 19-23.)  Finally, he argues that the

---

[1]     Pursuant to the Court's January 8, 2021 Standing Order, the Plaintiff will be identified solely by first name and last initial, or as "Plaintiff," throughout this opinion.  *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

1

ALJ did not properly evaluate his pain in accordance with the applicable Social Security Administration ("SSA") regulations. (*Id.* at 23-25.) Having carefully reviewed the parties' briefs and the entire, 2,539-page administrative record, the Court disagrees. The Plaintiff's motion will therefore be denied, the Commissioner's will be granted, and judgment will enter in the Commissioner's favor.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On March 16, 2023, the Plaintiff filed an application for DIB under Title II. (R. 76.) He claimed an inability to work due to many conditions, including thyroid cancer, radial neck dissection, "hypoparathyroid condition - low calcium," muscle spasms, "sleep apnea, anxiety, depression, adjustment disorder, frequent mood swings, insomnia," right shoulder mobility issues and pain, neuritis, radiculopathy lesion, and lower back pain.[2] (*Id.*) He alleged a disability onset date of January 27, 2023. (*Id.*) His application was denied initially on April 12, 2023 (R. 75), and upon reconsideration on November 20, 2023. (R. 95.) The Plaintiff timely requested a hearing before an ALJ, which took place on October 23, 2024. (R. 49.)

On December 20, 2024, the ALJ issued an unfavorable decision. (R. 7.) As will be discussed below, ALJs must follow a five-step process in determining eligibility for DIB, and the ALJ's eighteen-page decision followed that format. (R. 10-27.) At Step One, he held that the Plaintiff had "not engaged in substantial gainful activity since January 27, 2023," the alleged onset date. (R. 12.) At Step Two, the ALJ concluded that the Plaintiff's "obesity, asthma, cervical

---

[2]    The Plaintiff's twenty-five-page brief includes a seventeen-page statement of facts. (Pl.'s Memo. at 3-19.) The Commissioner incorporated those facts into his own brief, except for "any inferences, arguments, or conclusions asserted therein[.]" (Def.'s Mot. to Affirm the Decision of the Comm'r, ECF No. 24, at 2) ("Def.'s Memo."). Because the parties do not have any material factual disagreements, the Court will dispense with an extended discussion of the Plaintiff's medical history in this Section. Portions of the medical history relevant to the Court's decision will be set forth in Section III below.

degenerative disc disease, thyroid cancer (status post (s/p) thyroidectomy and radical dissection), and chronic regional pain syndrome (CRPS)" constituted "severe impairments," because they "significantly limit [the Plaintiff's] ability to perform basic work activities[.]" (R. 13.)  He also considered the Plaintiff's medically determinable impairments of "post-operative hypoparathyroidism and hypothyroidism," hypogonadism, obstructive sleep apnea, hypertension, and major depressive disorder, but concluded that those impairments were non-severe. (R. 13-14.) The Plaintiff does not challenge these non-severity conclusions on appeal.

At Step Three, the ALJ held that the Plaintiff's impairments did not meet or medically equal any of the "Listings" – that is, the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (R. 16.)  He considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), 1.18 (abnormality of a major joint(s) in any extremity), 3.03 (asthma), and 13.09 (cancers of the thyroid gland), but determined that the requirements had not been satisfied. (*Id.*)  He also considered the Plaintiff's CRPS in accordance with SSR 03-2p, but concluded that his CRPS did not rise to listing-level severity. (*Id.*)

The ALJ then determined the Plaintiff's RFC.  (R. 16-17.)  He determined that, notwithstanding his impairments, the Plaintiff possessed the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except that he can occasionally push, pull, and reach overhead with his bilateral upper extremities. He can frequently reach in all other planes, handle and finger with his bilateral upper extremities.  He is unable to climb ladders, ropes and scaffolds.  The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.  He must avoid work environments requiring exposure to higher concentrations of dusts, fumes, gases and other pulmonary irritants.  He must avoid work at unprotected heights.

(R. 16-17.)  After determining the Plaintiff's RFC, the ALJ proceeded to Step Four. (R. 25.)  He concluded that the Plaintiff's limitations would not permit him to return to his past relevant work

as a licensed practical nurse.[3]  (R. 25-26.)  But at Step Five, he held that the Plaintiff could perform the jobs of cashier II, sales attendant, and routing clerk, and that those jobs "exist[] in significant numbers in the national economy."  (R. 27.)  He therefore ruled that the Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 27, 2023, through the date of this decision[.]"  (*Id.*)

The Plaintiff requested review (R. 238), but the Appeals Council "found no reason under [the SSA's] rules to review the Administrative Law Judge's decision."  (R. 1.)  It therefore denied his request, making the ALJ's decision "the final decision of the Commissioner of Social Security in [his] case."  (*Id.*)

The Plaintiff timely filed suit in this Court (Compl., ECF No. 1), and the Commissioner answered by filing the certified administrative record.  (ECF No. 10, 10-1 *et seq.*); *see also* Supp. R. for Soc. Sec. 4(b) ("An answer may be limited to a certified copy of the administrative record[.]").  The parties consented to the jurisdiction of the undersigned Magistrate Judge.  (ECF Nos. 2, 9.)  The Plaintiff then filed his motion to reverse the decision of the Commissioner (ECF No. 15), and the Commissioner filed a motion to affirm.  (ECF No. 24.)  The Plaintiff did not file a reply brief, and neither party requested oral argument.  The motions are ripe for decision.

## II.    APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, a claimant must be "unable 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

---

[3]    The Plaintiff had served his country as a United States Navy hospital corpsman.  (R. 77.) At the benefits hearing, a vocational expert ("VE") testified that "the hospital corpsman is most closely related to the nurse, licensed practical" in the Dictionary of Occupational Titles.  (R. 67.) The Plaintiff does not challenge that conclusion on appeal.  (*See generally* Pl.'s Memo.)

to last for a continuous period of not less than [twelve] months.'" *Rubin v. O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 147 (2d Cir. 2024) (quoting 42 U.S.C. § 423(d)(1)(A)).  To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (first citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); and then citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).  At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.*  At Step Three, the ALJ then evaluates whether the claimant's condition "meets or equals the severity" of one of the Listings.  *Id.*  At Step Four, the ALJ uses an RFC assessment to determine whether the claimant can perform any of his "past relevant work . . . ." *Id.*  If the claimant cannot do that work, the ALJ then proceeds to Step Five and addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.*  The claimant bears the burden of proving his case at Steps One through Four.  *Id.*  If Step Five is reached, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).  Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error.  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision

is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g) and *Bubnis v. Apfel*, 150 F.3d 177, 181 (2d Cir. 1998)).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *See Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotation marks and citation omitted)). Although the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citation omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he has made a material legal error. In other words, district courts do not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case . . . ." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quotation marks omitted) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## III.    DISCUSSION

Although the "Argument" portion of the Plaintiff's brief has only two section headings, the Court observes three principal claims of error in it. First, the Plaintiff argues that the ALJ failed

6

to develop the record when he failed to "obtain a consultative physical examination or send a medical questionnaire to any treating physician[.]" (Pl.'s Memo. at 20.) [4]  Second, he argues that the ALJ's RFC determination is not supported by substantial evidence.  (*Id*. at 19-23.)  Third, he argues that the ALJ misapplied Social Security Ruling 16-3p, 2017 WL 5180304, at *7-8 (S.S.A. Oct. 25, 2017) (hereinafter "SSR 16-3p"), which outlines the two-step process for evaluating a claimant's symptoms such as pain.  He asserts that the ALJ's decision "contains legally insufficient discussion of the claimant's reports of pain, both in his testimony and throughout the longitudinal record, by omitting discussion" of the necessary factors.   (Pl.'s Memo. at 23-24.)   The Commissioner disagrees, arguing that the ALJ's decision is supported by substantial evidence and free of legal error.  (*See generally* Def.'s Memo.).  For the following reasons, the Court concludes that the ALJ's decision contained no legal error and was supported by substantial evidence in the record.

## A.    The ALJ Did Not Fail to Develop the Record.

The Plaintiff argues that the ALJ erred when he made an RFC determination without "obtain[ing] a consultative physical examination or send[ing] a medical questionnaire to any treating physician," as the record does not "contain a treating source opinion on the extent of the plaintiff's functional limitations."  (Pl.'s Memo. at 20.)  The Commissioner disagrees, asserting that "[t]he evidence of record was sufficient for the ALJ to make an informed disability decision

---

[4]    The Plaintiff does not assert "failure to develop the record" as a distinct claim of error in a separate section of his brief; he instead made this assertion to support his argument that the ALJ's RFC determination was not supported by substantial evidence.  (*See* Pl.'s Memo. at 19-20.)  But the Commissioner interpreted him as having raised it as a separate claim.  (*See* Def.'s Memo. at 5) (characterizing the argument as a "contention that the ALJ failed to adequately develop the evidence").  There is authority for the proposition that, if that argument is raised as a separate claim of error, it is a "threshold question that must be addressed before the court can consider whether the Commissioner's final decision is supported by substantial evidence." *Trasielyn A. v. Kijakazi*, No. 3:21-cv-253 (TOF), 2022 WL 4129343, at *5 (D. Conn. Sept. 12, 2022).  The Court will therefore address it as a distinct claim of error even though the Plaintiff ostensibly did not.

and Plaintiff points to no obvious gaps in the administrative record that would justify purchasing a consultative examination and/or sending medical questionnaires to his treating sources." (Def.'s Memo. at 5-6.)  For the reasons set forth below, the Court agrees with the Commissioner.

An ALJ may commit reversible error when he fails to order a consultative examination, but he is not required to order an examination "if the facts do not warrant or suggest the need for it." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) (summary order).  A consultative examination should be ordered where "the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision" on the claim.  20 C.F.R. § 404.1519a(b); *see also* 20 C.F.R. § 416.919a(b).  Similarly, an ALJ is not obligated to request medical source opinions if "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi*, 521 F. App'x at 34.  "Stated differently, the ALJ's duty to develop the record is not unlimited and may be discharged when he 'possesses [the claimant's] complete medical history' and there are no 'obvious gaps or inconsistencies' in the record." *Jeffery Z. v. Kijakazi*, No. 3:21-cv-1458 (MPS), 2023 WL 8115041, at *15 (D. Conn. Feb. 21, 2023) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)).

The Plaintiff does not point to any obvious gaps or inconsistencies in the record.  Instead, he generally implies that it was inappropriate for the ALJ to form an RFC without opinion evidence from a consultative examiner or a treating provider.  But "[i]t is well-settled that a consulting physician's opinion can constitute substantial evidence supporting an ALJ's conclusions." *Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015) (collecting cases).  When the opinions of non-examining medical consultants have proper support in the record, ALJs are entitled to rely on them "because those consultants are deemed to be qualified experts in the field of social security

8

disability." *Wilson v. Saul*, No. 3:18-cv-1097 (WWE), 2019 WL 2603221, at *11 (D. Conn. June 25, 2019).

The Court concludes that the record was complete and detailed enough for the ALJ to determine the Plaintiff's RFC.  The ALJ had a 2,539-page record, which included the evaluations from the non-examining state agency consultants (R. 80-83, 91-93), the Naval Disability Evaluation report (R. 465-82); the Plaintiff's ratings decision from the Department of Veterans Affairs (R. 2237-39); records of the Plaintiff's treatment of thyroid cancer from treating specialist Christine Signore, M.D. (R. 628-59, 2461-537); records of the Plaintiff's treatment for chronic neck, shoulder, and arm pain from his treating providers at Comprehensive Pain & Headache Treatment Centers (R. 1411-83); and progress notes, physical examination findings, and test results from his primary care providers at the VA.  (R. 1800-2089, 2137-206, 2259-330, 2421-54.)  The Plaintiff also testified at the hearing, where he was examined by his own lawyer and by the ALJ. (R. 55-66.)  On the facts of this case, the record contained "sufficient evidence from which [the] ALJ [could] assess the [plaintiff's] residual functional capacity." *Tankisi*, 521 F. App'x at 34.

### B.      The ALJ's RFC Determination is Supported By Substantial Evidence.

The Plaintiff argues that the ALJ's decision is not supported by substantial evidence, stating that the ALJ erred by relying upon the opinions of the state agency consultants but ignoring "treating source evidence" that supports a higher degree of functional impairment.  (Pl.'s Memo. at 20.)  Specifically, he points to the 2021 Naval disability evaluators' opinions and treatment records from his neurologist, Dr. Tinklepaugh.  (*Id*. at 20-22.)  The Plaintiff also argues that it was error for the ALJ to rely on the state agency consultant opinions without considering a "cervical

spine MRI demonstrating stenosis at C4-5 and C5-6," which post-dated the state agency consultants' opinions. [5] (Pl.'s Memo. at 22.)

As noted above, "[i]t is well-settled that a consulting physician's opinion can constitute substantial evidence supporting an ALJ's conclusions." *Suarez*, 102 F. Supp. 3d at 577. Of course, "[c]ourts in this Circuit long have casted doubt on assigning significant weight to the opinions of consultative examiners when those opinions are based solely on a review of the record." *Soto v. Comm'r of Soc. Sec.*, No. 19-cv-4631 (PKC), 2020 WL 5820566, at *7 (E.D.N.Y. Sept. 30, 2020). But if the opinions have proper support in the record, "[a]n ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability." *Wilson*, 2019 WL 2603221, at *11.

The Plaintiff does not argue that state agency consultants' opinions are unsupported by record evidence. Instead, he directs the Court to particular evaluations and medical records, asserting that these records serve as "objective support for the plaintiff's allegations of significant limitations," and the ALJ erred by either dismissing them or ignoring them. (*See generally* Pl.'s Memo. at 19-23.) He begins by questioning the ALJ's decision to reject the 2021 Naval disability evaluators' opinions as "specialists [who] did not treat or examine the claimant," stating that one of the evaluators – Dr. Henderson – saw the Plaintiff more than once in 2022. (*Id.* at 21.) This

---

[5]   The Plaintiff also appears to be arguing that the state agency consultants did not consider certain pain management records. (*See* Pl.'s Memo. at 22 ("In pain management, the plaintiff reported a constant aching sensation in his bilateral shoulders (R. 1480). This evidence entered the record after the state agency consultants had rendered their opinions.")). He is mistaken. The pain management records that the Plaintiff is referring to were reviewed by both state agency consultants. (*Compare* R. 79, 88 ("Comprehensive Pain & Headache: 1/5/23-2/14/23 CHRONIC NECK PAIN-Neck pain is most likely secondary to Brachial plexopathy") *with* R. 1480 ("DOS 2/14/2023 . . . Patient's chronic neck pain is most likely secondary to Brachial plexopathy. . . . Pt presents for a follow up. He c/o of constant aching sensation - in bilateral shoulders")).

argument is not persuasive, for two reasons. First, the ALJ did not entirely discount the 2021 opinion. He found it minimally persuasive, concluding that their finding that limited the Plaintiff to "light" work was consistent with the overall record, but that their findings "regarding the [Plaintiff] being unable to push, pull or lift objects weighing more than five pounds" were "not supported by the evidence they relied upon in formulating their opinions" and "inconsistent with the other evidence of record." (R. 23-24.) Second, the Plaintiff argues that the decision to partially discount the opinion was inappropriate because Dr. Henderson had, in fact, treated the Plaintiff. But even though Dr. Henderson saw the Plaintiff for a "PRT waiver" in April 2022 and a separation physical in June 2022 (R. 990, 1378), this does not refute the ALJ's observation that the 2021 opinion was not based on physical examination findings.

The Plaintiff then points to the treatment records from his neurologist, Dr. David Tinklepaugh, asserting that the ALJ committed error by failing to evaluate them. (Pl.'s Memo. at 21.) In June 2022, Dr. Tinklepaugh performed an electrodiagnostic study on the Plaintiff after he presented for an evaluation of muscle cramping. (R. 982.) The study was "abnormal," with "electrodiagnostic evidence for widespread muscle membrane instability." (*Id.*) In August 2022, the Plaintiff saw Dr. Tinklepaugh again for an evaluation of his muscle cramping, spasms, and fatigue. (R. 683.) Dr. Tinkelpaugh noted that "electrodiagnostic testing revealed diffuse membrane instability in the muscle" and that it was "consistent with calcium deficiency to have muscle cramping and tetany." (R. 688.)

If the Plaintiff is attempting to argue that the ALJ erred because he did not explicitly discuss Dr. Tinklepaugh's notes in his opinion, that argument is not persuasive. "[A]n ALJ is not required to discuss every piece of evidence submitted," and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault*, 683 F.3d at 448 (quoting *Black*

11

*v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).  If the Plaintiff is instead arguing that the ALJ should have taken these test results and translated them into additional functional limitations, he is arguing that the ALJ should have done precisely what an ALJ should *not* do.  "Because ALJs are not doctors, they ordinarily cannot translate diagnoses, medical test results and the like into functional, vocational terms without the aid of a medical provider's insight into how the claimant's impairments affect or do not affect [his] ability to work, or [his] ability to undertake [his] activities of daily life." *Robles v. Saul*, No. 3:19-cv-1329 (TOF), 2020 WL 5405877, at *4 (D. Conn. Sep. 9, 2020) (quotation marks and brackets omitted) (quoting *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) (summary order)).

Finally, the Plaintiff argues that it was error for the ALJ to rely upon the state agency consultant opinions because they did not review "the cervical spine MRI demonstrating stenosis at C4-5 and C5-6." (Pl.'s Memo. at 22.)  This amounts to an argument that the ALJ erred by relying on a stale medical opinion – a theory that the law recognizes but which the facts here do not support.  "A medical opinion issued without reviewing the entire record can be considered stale." *Sonia N.B.A. v. Kijakazi*, No. 3:21-cv-709 (TOF), 2022 WL 2827640, at *5 (D. Conn. July 20, 2022).  And a stale medical source opinion "may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order).  "For example, a medical opinion will be stale if it does not account for a claimant's deteriorating condition[.]" *Sonia N.B.A.*, 2022 WL 2827640, at *5.  But "[a] medical opinion that is based on an incomplete record . . . is not stale where 'the treatment notes and opinions in the record before and after the opinion was issued demonstrate substantially similar limitations and findings.'" *Id.* (brackets omitted) (quoting *Camille*, 104 F. Supp. 3d at 344).

This MRI report does not show a "material change" in the Plaintiff's conditions, such that the state agency consultants' opinions would be rendered stale. The Plaintiff's cervical spine issues well preceded the MRI in October 2024, with both state agency consultants commenting on his history of C4-5 fusion. (R. 88, 92-93) The state agency consultant on reconsideration, Linda Albert, MD, specifically noted that the RFC required additional limitations because of, among other things, the "C45 fusion" and "neck pain." (R. 93.) The MRI report provides additional evidence of cervical spondylosis (R. 2456), but it does not indicate any changes to the Plaintiff's functional limitations or worsening of the Plaintiff's condition. In sum, the MRI report does not demonstrate a material change in condition that would render the consultants' opinions stale.

### C. The ALJ Evaluated the Evidence in Accordance with the Applicable SSA Regulations.

The Plaintiff challenges the ALJ's evaluation of his pain, arguing that the ALJ violated SSR 16-3p when he failed to properly analyze the required regulatory factors. Specifically, he contends that the ALJ ignored evidence supporting his claims of "severe pain, tightness and cramping in the plaintiff's neck and upper extremities," including years of trigger point injection treatment that provided no lasting relief, and that he failed to evaluate "factors precipitating and aggravating the symptoms." (Pl.'s Memo. at 23-25.) The Commissioner responds that the ALJ properly fulfilled his obligations under SSR 16-3p by analyzing the objective medical evidence of record, as well as the findings of the state agency medical consultants. (Def.'s Memo. at 12-13.)

The parties' dispute implicates the SSA's two-step process for evaluating a claimant's symptoms. *See* 20 C.F.R. § 404.1529(c)(1); SSR 16-3p, at *3 ("We use a two-step process for evaluating an individual's symptoms."). In the first step, the ALJ must determine whether the "medical signs or laboratory findings" show that the claimant "has a medically determinable impairment . . . that could reasonably be expected to produce" the claimed symptoms. SSR 16-

3p, at *3.  If so, the ALJ proceeds to the second step, at which he evaluates "the intensity and persistence of [the claimant's] symptoms such as pain," and determines the extent to which those symptoms "limit his or her ability to perform work-related activities."  *Id*. at *4; *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

In performing the second step, "the ALJ must consider all of the available evidence, including objective medical evidence, from both medical and nonmedical sources."  *Gonzalez v. Berryhill*, No. 3:18-cv-241 (SRU), 2020 WL 1452610, at *12 (D. Conn. Mar. 25, 2020).  The ALJ "may not reject a claimant's subjective opinion regarding the intensity and persistence" of his symptoms "solely because the available objective medical evidence does not substantiate . . . [his] statements."  *Id*. (quotation marks omitted) (quoting 20 C.F.R. § 416.929(c)(2)).  If there is a conflict between the objective evidence and the claimant's testimony, "the ALJ must consider the other evidence," including "(1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; (5) treatment, other than medication, received for pain relief; (6) measures taken to relieve pain and other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms."  *Id*. (quotation marks and brackets omitted) (quoting *Graf v. Berryhill*, No. 3:18-cv-93 (SRU), 2019 WL 1237105, at *8 (D. Conn. Mar. 18, 2019)); *see also* 20 C.F.R. § 404.1529(c)(3).

Provided that the ALJ follows this process, his conclusions are entitled to deference from this Court.  "It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms."  *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order)

14

(quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). These findings "are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'" *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (quoting *Lennon v. Waterfront Transp.*, 20 F.3d 658, 661 (5th Cir. 1994)); *see also Gonzalez*, 2020 WL 1452610, at *13 (same).

In this case, the parties' dispute primarily arises out of the ALJ's handling of the second step. The ALJ ruled in the Plaintiff's favor at the first step, holding that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms" (R. 17), and neither party seriously disputes that holding here. (*See* Def.'s Memo. at 12.) But in the second step he concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. 17.) The Plaintiff argues that the ALJ's decision "contains legally insufficient discussion of the claimant's reports of pain, both in his testimony and throughout the longitudinal record, by omitting discussion" of the factors set forth in 20 CFR § 404.1529(c)(3). (Pl.'s Memo. at 23-24.) The Commissioner asserts that the ALJ "supportably determined that [the Plaintiff's] allegations of disabling pain were not entirely consistent with substantial evidence of record." (Def.'s Memo. at 13.)

Having carefully studied the matter, I conclude that the ALJ evaluated the Plaintiff's pain in accordance with the SSA's regulations, and that his findings were not "patently unreasonable." As directed by 20 C.F.R. § 404.1529(c)(2), the ALJ began the second step by considering the objective medical evidence. He first addressed the Plaintiff's allegation that he is disabled by residual thyroid cancer symptoms, observing that since June 2022, the Plaintiff "had no significant increases in his thyroglobulin levels over the last ten years, no suspicious lymph node ultrasounds,

15

and no activity on iodine scans." (R. 20) (citing R. 633, 2528). The ALJ concluded that the Plaintiff's "conservative course of thyroid cancer related treatment (s/p surgeries), his lack of a need for additional cancer related treatments and his response to past treatments do not support that he needs to remain housebound or that he would be regularly absent from work due to such conditions." (R. 20) (citing 2525, 2528). He then addressed the Plaintiff's "CRPS related neck and shoulder pain" and "right upper extremity neuropathic pain." (R. 20.) He accepted that these conditions were "sequelae from [the Plaintiff's] past thyroid cancer surgeries," and that those findings "combined with his history of mild asthma, cervical degenerative changes and obesity" limited his functional capabilities. (R. 20-21.) He nevertheless concluded that the objective medical evidence did not support that the Plaintiff was as limited as he purported, citing the "lack of joint deformities, good joint ROM, 4-5/5 upper extremity and grip strength, 5/5 lower extremity strength and normal gait at numerous examinations[.]" (R. 21) (citing R. 470, 475, 1474-75, 1477, 2047, 2051, 2139, 2142, 2326, 2368, 2434, 2437-38, 2457).

The ALJ did not stop with this analysis of the objective evidence. As required when the objective medical information ostensibly conflicts with the claimant's testimony, *see* 20 C.F.R. § 404.1529(c), he went on to consider other evidence, including the Plaintiff's activities of daily living and measures taken to relieve the pain. With respect to activities of daily living, the ALJ noted that the Plaintiff could "cook simple meals, drive and shop in stores." (R. 24.) The Plaintiff contends that the decision "does not contain any discussion of [his] daily activities," stating that the record is "devoid of daily activity evidence that would support a finding of the ability to perform full time work on a consistent basis." (Pl.'s Memo. at 24.) He points generally to "the medical records" and to the Navy's disability decision, stating that this evidence demonstrates that he is "effectively homebound by his chronic pain." (*Id.*) But, as previously noted, the ALJ did

discuss and cite to evidence of the Plaintiff's daily activities – specifically, the Plaintiff's Adult Function Report, where he stated that he can cook meals, drive, and shop in stores.  (R. 20) (citing R. 314-51).

As to the location, duration, frequency, and intensity of the Plaintiff's pain and other symptoms, the ALJ discussed throughout his opinion the Plaintiff's complaints of chronic musculoskeletal pain, neck and upper back pain, shoulder pain, and arm pain.  (R. 18-23.)  The ALJ acknowledged the effect that the Plaintiff's conditions would have on his RFC, partially rejecting the opinion of state agency medical consultant Richard Papantonio, M.D., because he concluded that the Plaintiff's conditions would result in more functional limitations than Dr. Papantonio assessed.  (R. 22.)  He found the opinion of Dr. Albert more persuasive for that reason, concluding that Dr. Albert's more restrictive overall findings were "consistent with the other evidence of record," which documented the Plaintiff's "obesity, CRPS related neck and bilateral shoulder pain/tenderness, joint pain with activity, and thyroid related fatigue and muscle cramping[.]"  (*Id.*)

The Plaintiff argues that the ALJ erred by failing to evaluate his pain relief measures and other treatments, and particularly the treatment notes from Comprehensive Pain & Headache Treatment Centers.  (Pl.'s Memo. at 24.)  He points out that he received "years of trigger point injections for chronic neck pain, brachial plexopathy and [CRPS]" and that "[n]owhere in these many pages of records is there any hint of lasting pain relief such as would permit plaintiff to sustain full-time employment."  (*Id.*)  But the ALJ did address the Plaintiff's pain relief measures, including the trigger point injections.  He noted that the Plaintiff had trigger point injections in the past which "lasted only for a few days," citing to the Plaintiff's pain management consultation in June 2023.  (R. 18) (citing R. 1961).  He also noted the Plaintiff's testimony that his constant pain

was "improved, but not eliminated, [by] his spinal cord stimulator." (R. 17); that he was prescribed "oxycodone, valium, Motrin and Flexeril" for his pain (R. 18) (citing R. 1961); and that he declined further trigger point injections or physical therapy in September 2024. (R. 19) (citing R. 2438).

Although the ALJ did not specifically cite the records from Comprehensive Pain & Headache Treatment Centers in the context of the Plaintiff's pain relief measures, the ALJ noted a visit with Comprehensive Pain & Headache Treatment Centers where he presented with "right brachial plexopathy with neuropathic pain" and was "diagnosed with sequela injury of brachial plexus and right upper limb CRPS." (R. 18) (citing R. 1474-75, 1477-78). The ALJ weighed these diagnoses, and the abnormal physical examination findings, against physical examination findings showing "normal cervical ranges of motion (ROM)," "normal gait and tandem walk," "4/5 right upper extremity and grip strength, 5/5 left upper extremity strength and normal bilateral lower extremity strength." (R. 18) (citing R. 1477).

Finally, the Plaintiff argues in a single sentence that the ALJ's decision was legally insufficient because it "does not evaluate factors precipitating and aggravating the symptoms, which in this case is any prolonged use of his upper extremities." (Pl.'s Memo. at 25.) The Court is satisfied that the ALJ adequately considered factors that precipitate and aggravate the Plaintiff's pain, including the use of his upper extremities. He noted the Plaintiff's testimony that he had "problems using his right upper extremity, especially when it was overused" (R. 17), as well as a treatment note where the Plaintiff reported that "his pain worsened when using his upper extremity." (R. 18) (citing R. 1474). He found that the plaintiff's right upper extremity pain, "intermittent right arm numbness and tingling," 4/5 right upper extremity strength, CRPS in neck and bilateral shoulders, and right upper extremity neuropathy – combined with his other conditions – limited his functional capabilities. (R. 21-23.) And he incorporated those limitations into the

18

RFC, finding that the Plaintiff "does not possess the physical ability and stamina" to lift and/or carry more than twenty pounds at a time (R. 22); he can "never climb ladders ropes and scaffolds in order to avoid symptom exacerbations" (*id.*); and he is limited to "occasionally pushing, pulling and reaching overhead with his bilateral upper extremities, frequently reaching in all other planes bilaterally" because he "does not possess the physical ability and stamina to consistently push, pull, reach in all directions bilaterally[.]" (R. 22-23.) These limitations directly account for the impact of the sustained or repeated use of the Plaintiff's upper extremities, even if not to the degree that the Plaintiff would prefer.

When an ALJ specifically addresses a claimant's subjective complaints in accordance with SSA regulations, he is "entitled to make a credibility determination regarding" the claimant's allegations. *Jordan v. Barnhart*, 29 F. App'x 790, 794 (2d Cir. 2002) (summary order). The plaintiff clearly disagrees with the ALJ's findings, pointing to evidence in the record suggesting greater limitations than recognized by the ALJ. But the question here is whether the ALJ's determination was sufficiently supported by the record, not whether a contrary finding might also have been supported. "Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'" *Pietrunti*, 119 F.3d at 1042 (quoting *Lennon*, 20 F.3d at 661). The ALJ's findings are not patently unreasonable here, and accordingly, he did not commit error when he evaluated the Plaintiff's complaints of pain and found that they did not limit him to the extent he alleged.

## IV.    Conclusion

For the foregoing reasons, the Court concludes that that the ALJ's did not fail to develop the record, his decision was supported by substantial evidence, and that he properly evaluated the Plaintiff's subjective complaints in accordance with SSA regulations. The Plaintiff's Motion to

19

Reverse the Decision of the Commissioner (ECF No. 15) is therefore **DENIED**, and the Defendant's Motion to Affirm the Decision of the Commissioner (ECF No. 24) is **GRANTED**.

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. (ECF No. 9.) Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P 73(c). The Clerk of the Court is respectfully directed to enter judgment in favor of the Defendant, and to close the case.

So ordered at Hartford, Connecticut this 16th day of July, 2026.

*/s/ Thomas O. Farrish*

Hon. Thomas O. Farrish
United States Magistrate Judge